1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12
13
14
15
16
17

| MATHEW ENTERPRISE, INC., | Case No. 16-CV-03551-LHK |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| FCA US, LLC, | Re: Dkt. No. 19 |
| Defendant. | |

Plaintiff Mathew Enterprise, Inc. ("Plaintiff") sues Defendant FCA US, LLC

18

("Defendant") for violation of the Automobile Dealer's Day in Court Act ("ADDCA"), 15 U.S.C.

19

§ 1222; breach of the implied covenant of good faith and fair dealing; and violation of California

20

Vehicle Code § 3060.  ECF No. 1 ("Compl.").  Before the Court is Defendant's motion to dismiss.

21

ECF No. 19 ("Def. Mot.").  Having considered the parties' submissions, the relevant law, and the

22
23

record in this case, the Court hereby GRANTS Defendant's motion to dismiss.

24
25

I.      BACKGROUND

26

        A.      Factual Background

27

        Defendant is the manufacturer and distributor of Chrysler, Dodge, Jeep, and Ram

28

Case No. 16-CV-03551-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1  ("CDJR") motor vehicles.  Compl. ¶ 2.  Plaintiff is a franchised dealer of CJDR vehicles.  *Id.* ¶ 7.

2  Plaintiff and Defendant have entered into contracts relating to Plaintiff's sale of CJDR vehicles,

3  and these contracts form the basis of this lawsuit.

### 1. The Parties' 2006 Dealer Lease and Sales Agreement

5         On December 6, 2006, Plaintiff entered into a two-year lease ("2006 Dealer Lease") with

6  Defendant[1] for Plaintiff to occupy Plaintiff's current franchise location at 4100 Stevens Creek

7  Boulevard in San Jose, California ("4100 Stevens Creek").  *Id.* ¶¶ 6, 11, 15.  Under the terms of the

8  2006 Dealer Lease, Plaintiff paid Defendant $69,000 in rent per month to occupy the 4100 Stevens

9  Creek location.  *Id.* ¶ 21.

10        Paragraph 25 of the 2006 Dealer Lease provided that "[i]n the event that the Tenant shall

11  remain on the Premises after the expiration or sooner termination of the term of this Lease without

12  having executed a new written lease with Landlord, such holding over shall not constitute a

13  renewal or extension of this Lease."  ECF No. 19-1, at 15.[2]  Further, paragraph 25 provided that

14  Defendant could "elect, at its option, to treat such holding over as a tenancy upon the same terms

15  and conditions herein stated, except that such tenancy shall be on a month-to-month basis only and

16  the monthly rent due during such tenancy . . . shall be in an amount equal to 200% of the rental set

17  forth" in the 2006 Dealer Lease.  *Id.*

---

[1] Plaintiff entered the 2006 Dealer Lease with Chrysler Realty Company LLC.  Compl.  ¶ 9.  However, Chrysler Realty Company LLC's interest in 4100 Stevens Creek was acquired by FCA Realty LLC after Chrysler Realty Company LLC went bankrupt.  *Id.* ¶ 15.  FCA Realty LLC is an "alter ego" of Defendant.  *Id.* ¶ 12.  For simplicity, the Court will collectively refer to these related entities as "Defendant" for the purposes of resolving this motion.

[2] Plaintiff's Complaint quotes provisions of the Sales Agreement and 2006 Dealer Lease, but Plaintiff did not attach the Sales Agreement or 2006 Dealer Lease to its Complaint.  Defendant attached these documents to its motion to dismiss.  *See* ECF No. 19-1.  "A court may consider evidence on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Here, the Court may consider the Dealer Lease and the Sales Agreement because Plaintiff "refers to the document[s]" in its Complaint, the documents form the basis of Plaintiff's claim, and "no party questions the authenticity of the cop[ies] attached to the 12(b)(6) motion."  *Id.*  Indeed, in its brief in opposition to Defendant's motion to dismiss, Plaintiff cites from the documents attached to Defendant's complaint.  ECF No. 31, at 9.  Accordingly, the Court will treat the Sales Agreement and Dealer Lease as "part of the complaint."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Case No. 16-CV-03551-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

*(left margin, rotated)* United States District Court  Northern District of California

The Terms Sales and Service Agreement attached to the 2006 Dealer Lease required Plaintiff to "submit directly to the [developer] two sets of complete plans and renderings for the renovation of [Plaintiff's] facility" at 4100 Stevens Creek "[w]ithin two months." ECF No. 19-1, at 25. Plaintiff was also required to "[c]omplete, or cause completion of the renovation and expansion . . . in accordance with the plans and renderings approved." *Id.* at 26.

The parties' also executed a Sales and Service Agreement Additional Terms and Provisions ("Sales Agreement"). *See id.* at 47. Section 11(d)(i) of the Sales Agreement provides that Plaintiff is required to conduct its CJDR dealership operations only at the 4100 Stevens Creek location. *Id.* at 51; Compl. ¶ 8. Further, § 11(d)(ii) of the Sales Agreement provides the following:

> DEALER shall not make any change in the location of Dealership Operations or make any change in the area and use of Dealership Facilities without the prior written approval of [Defendant]. Any written approval of a change in the location or in the area or use of Dealership Facilities shall be valid only if in the form of a new Dealership Facilities and Location Addendum or a separate written agreement signed by DEALER and one of the authorized representatives of [Defendant] identified in Paragraph 10 hereinabove.

ECF No. 19-1, at 51.

## 2. Defendant's New Lease Proposal

In December 2015, Defendant sent a letter to Plaintiff that stated that, since the parties' two-year 2006 Dealer Lease expired in 2008, Plaintiff had been a "holdover tenant" at the 4100 Stevens Creek Location since the expiration of the 2006 Dealer Lease. Compl. Ex. A.

Defendant enclosed with its letter a proposed new lease ("New Dealer Lease") for Plaintiff's review. *Id.* The New Dealer Lease proposed a five-year lease term with Defendant. *Id.* Defendant's letter stated that if Plaintiff chose not to agree to the New Dealer Lease, "FCA Realty will have no choice but to exercise its right under the Expired [2006 Dealer] Lease, including, without limitation, increasing the current rental rate by 200% as permitted under paragraph 25 thereof, as of January 1, 2016." *Id.*

3

Case No. 16-CV-03551-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Defendant's proposed New Dealer Lease provided that Plaintiff would pay Defendant an "initial monthly base rent" of $93,907. *Id.* ¶ 23. The New Dealer Lease further provided Defendant "the right, but not the obligation, to construct new dealership facilities at Plaintiff's Current Location at a cost not to exceed $14,000,000." *Id*. If Defendant chose to exercise its right to construct new facilities, the New Dealer Lease provided a formula for how the parties would calculate Plaintiff's post-construction monthly rent. *Id.*

Plaintiff did not accept the New Dealer Lease. *Id.* ¶ 24. According to Plaintiff, it declined to accept the New Dealer Lease's terms because, among other reasons, "[i]f Defendant's Facility Proposal were implemented, the likely cost would be at or near the maximum cost of $14,000,000, and would result in an annual rent factor expense for the dealership in excess of $2,750,000," which would "exceed a market-based rent for an automobile dealership business at Plaintiff's Current Facility" and would "render Plaintiff uncompetitive and unprofitable." *Id.* ¶ 24.

As of January 1, 2016, in accordance with Paragraph 25 of the 2006 Dealer Lease and the December 2015 letter, Defendant increased Plaintiff's rent by two-hundred percent. *Id.* ¶ 25.

### 3. Plaintiff's Relocation Request

On January 27, 2016, Plaintiff sent a letter to Defendant requesting approval from Defendant for Plaintiff to relocate and enter into a new facility plan (the "relocation proposal"). *Id.* ¶ 27; Compl. Ex. B. Specifically, Plaintiff's relocation proposal sought approval for Plaintiff to relocate from 4100 Stevens Creek to 3566 Stevens Creek Boulevard ("3566 Stevens Creek"), a location less than a mile away. Compl. ¶¶ 27–28; Compl. Ex. B. According to Plaintiff, by relocating, Plaintiff would pay "an annual rent factor that is at least $2,200,000 less." Compl. ¶ 30.

On February 5, 2016, Defendant rejected Plaintiff's relocation proposal. *Id.* ¶ 31. Defendant stated that Plaintiff "failed to provide any details about the proposed relocation," such

4

United States District Court
Northern District of California

as "the size or area of the lot," "any construction plans or details," and "any schedule for any proposed relocation or construction." Compl. Ex. C. Defendant also noted that the proposed location at 3566 Stevens Creek was "inferior" because it was "not as ideally situated on the auto row," had "less frontage," and less visibility than the 4100 Stevens Creek location. *Id.* Further, because Plaintiff never renovated 4100 Stevens Creek in accordance with the terms of the 2006 Dealer Lease, Plaintiff had previously failed "to live up to its facility construction requirements" with Defendant, and thus Defendant doubted that Plaintiff would complete the relocation proposal's construction plans. *Id.*

On February 23, 2016, Plaintiff responded to Defendant's rejection "with a detailed letter by its counsel and documentation" that provided further details about the location at 3566 Stevens Creek. *Id.* ¶ 32. For example, Plaintiff explained in its letter to Defendant that the 3566 Stevens Creek location was "5.25 acres" in size and that it was "in a slightly better condition than [Plaintiff's] current location." Compl. Ex. D. Plaintiff also stated that the 3566 Stevens Creek location was "in closer proximity in relation to our main competitors," that it had over 100 more feet of frontage than the 4100 Stevens Creek location, and that "the proposed location feature[d] over 155,000 square feet of display space." *Id.*

On March 29, 2016, Defendant again rejected Plaintiff's relocation proposal. *Id.* ¶ 34. Defendant noted, "[a]s an initial matter . . . [Defendant] reject[ed] the proposal due to its doubt that [Plaintiff] will actually build the promised facility," given that Plaintiff had failed to renovate 4100 Stevens Creek as required by the 2006 Dealer Lease. Compl. Ex. E. Further, Defendant noted that Plaintiff's proposed architectural renderings for 3566 Stevens Creek did not "make sense with respect to the Proposed Location." *Id.* Defendant also retained "two consulting experts" who each "concluded that the Proposed Location is inferior" to the 4100 Stevens Creek location. *Id.* Defendant attached to its rejection letter the two experts' reports. *Id.*

5

**B. Procedural History**

On July 24, 2016, Plaintiff brought suit against Defendant in this Court.  *See* Compl.

Plaintiff alleges three causes of action against Defendant.

Count One states that Defendant violated the ADDCA "[b]y refusing to approve Plaintiff's

[relocation proposal] for alleged reasons that are without merit and pre-textual in order to coerce

Plaintiff to accept Defendant's Facility Proposal and incur a rent factor that will eventually force

Plaintiff to give up the Franchise."  *Id.* ¶ 54.

Count Two alleges that Defendant breached the implied covenant of good faith and fair

dealing by "refusing to approve Plaintiff's Relocation and Facility Proposal for alleged reasons

that are without merit and pre-textual."  *Id.* ¶ 62.

Count Three states that Defendant violated § 3060 of the California Vehicle Code by

constructively terminating Plaintiff's franchise without providing Plaintiff notice and without a

finding of good cause.  *Id.* ¶ 69.

On August 23, 2016, Defendants filed a motion to dismiss, contending that all three of

Plaintiff's causes of action fail to state a claim for relief.  Def. Mot. at 1.  Plaintiff responded on

September 16, 2016.  ECF No. 31 ("Pl. Opp.").  Defendant replied on September 30, 2016.  ECF

No. 36 ("Def. Reply").

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

6

1    'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

2    unlawfully." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal citation omitted).

3          For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

4    in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

5    party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

6    However, a court need not accept as true allegations contradicted by judicially noticeable facts,

7    *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the

8    plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into

9    one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1061, 1064 (9th Cir. 2011).  Mere "conclusory

10   allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

11   *Adams v. Johnson*, 355 F.3d 1179 1183 (9th Cir. 2004).

12         **B.      Leave to Amend**

13         If the court concludes that a motion to dismiss should be granted, it must then decide

14   whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

15   to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

16   of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

17   technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).

18   Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith

19   or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

20   previously allowed, undue prejudice to the opposing party by virtue of allowance of the

21   amendment, [and] futility of amendment."  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

22   522, 532 (9th Cir. 2008) (alteration in original).

23   **III.   DISCUSSION**

24         **A.      Failure to State a Claim Under the ADDCA**

7

Plaintiff alleges in Count One that Defendant violated the ADDCA, 15 U.S.C. §1221 *et seq.*, by "reject[ing] [Plaintiff's] relocation proposal and . . . insist[ing] that [Plaintiff] remain at its current location, which is economically unsustainable, to coerce [Plaintiff] to abandon its franchises and exit the business." Pl. Opp. at 7; *see* Compl. ¶¶ 34, 46–56. For the reasons discussed below, the Court agrees with Defendant that Count One fails to state a claim under the ADDCA.

In order to state a claim under the ADDCA, a Plaintiff must allege (1) the plaintiff is an "automobile dealer"; (2) the defendant is an "'automobile manufacturer' engaged in commerce"; (3) the existence of "a manufacturer-dealer relationship created by written franchise agreement"; and (4) that plaintiff was "injured by the defendant's failure 'to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer.'" *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) (quoting 15 U.S.C. § 1222). The parties do not dispute the first three prongs, and thus the only issue is whether Plaintiff has adequately alleged that Defendant failed to "act in good faith." *Id.*

Here, Plaintiff alleges that Defendant acted in bad faith by failing to approve Plaintiff's request to relocate. Compl. ¶ 54. According to Plaintiff, Defendant's rejection of Plaintiff's proposal is an attempt to "force Plaintiff to remain at Plaintiff's Current Location at an unaffordable rent factor." *Id.* ¶ 34, 54; Pl. Opp. at 7. However, even taking the factual allegations in Plaintiff's complaint as true, Plaintiff has failed to allege that Defendant has acted in "bad faith" within the meaning of the ADDCA.

Under the ADDCA, "good faith . . . has a limited and restricted meaning. It is not to be construed liberally." *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 911 (9th Cir. 1978). Rather, "[t]he courts have held consistently that the Act creates a cause of action an

8

indispensable element of which is not the lack of good faith in the ordinary sense but a lack of good faith in which coercion, intimidation, or threats thereof, are at least implicit." *Marquis v. Chrysler Corp.*, 577 F.2d 624, 633 (9th Cir. 1978); *see also Sherman*, 601 F.2d at 445 ("A showing of coercion and intimidation which produces unfair or inequitable results is essential to a valid claim of lack of good faith under the Dealer's Act."). More specifically, the Ninth Circuit has held that "[c]oercion or intimidation must include a wrongful demand which will result in sanctions if not complied with." *Autohaus*, 567 F.2d at 911.

The facts alleged in Plaintiff's complaint fail to show that Defendant engaged in "coercion" here within the meaning of the ADDCA. Instead, the crux of Plaintiff's complaint is that Defendant has made a "demand" to Plaintiff in the form of denying Plaintiff's proposed relocation. Compl. ¶ 55. This denial, Plaintiff argues, requires Plaintiff to remain at 4100 Stevens Creek where Plaintiff faces an "unaffordable rent factor." *Id.* ¶ 54; Pl. Op. at 8.

Importantly, however, Plaintiff has no right to "the location of its own choosing," even if its current location is unaffordable. *Golden Gate Acceptance Corp. v. Gen. Motors Corp.*, 597 F.2d 676, 680–81 (9th Cir. 1979). In *Golden Gate*, the Ninth Circuit considered a dealer's claim that a manufacturer terminated its franchise in "bad faith" because GM "insist[ed] upon a specific location" for the franchise, even though GM knew that the dealer "was losing money due to the difficulty of operating the franchise at the Premises." *Id.* at 680. GM terminated the dealership after the dealership moved to a new location without GM's permission. *Id.* The Ninth Circuit held that GM had not acted in bad faith under the ADDCA because "[t]here is nothing in the [ADDCA] which gives a dealer the right to dictate the location of its own choosing." *Id.* at 680–81 (internal quotation marks omitted). Accordingly, the Ninth Circuit concluded that "GM did not act in bad faith" in "requiring that the Dealership be located at a specified" location, and thus the Ninth Circuit rejected the dealer's claim. *Id.*; *see also* W. Michael Garner, 2 Franchise &

9

United States District Court
Northern District of California

Distrib. Law & Practice § 14:13 ("It is well-settled that a dealer does not have a right to a particular location and that a manufacturer's termination for failure to relocate is not coercive.").

Plaintiff asserts that *Golden Gate* is distinguishable because, unlike the dealer in *Golden Gate*, Plaintiff is alleging that Defendant's denial of its relocation request was pretext for forcing Plaintiff to remain at 4100 Stevens Creek and eventually "cease doing business as a CJDR dealer." Pl. Opp. at 7–8; Compl. ¶ 34.  However, even assuming that this is true, the facts in Plaintiff's complaint nonetheless fail to allege that Defendant engaged in conduct that "amounted to coercion and that as the result of intimidation or threats, [Plaintiff] was forced to act or refrain from acting," as required to establish a violation of the ADDCA.  *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1056 (1st Cir. 1985) (summarizing across-circuit case law regarding the duty of "good faith" under the ADDCA); *see also Autohaus*, 567 F.2d at 911 (listing exemplary "coercive" demands, such as a manufacturer's threat to stop shipping cars unless a dealer resigned its franchise in a neighboring town).  To the contrary, the facts alleged in Plaintiff's complaint show only that Defendant made a "demand" in the form of denying Plaintiff's relocation proposal—a proposal that Plaintiff had no right to have approved.  *Golden Gate*, 597 F.2d at 681; Compl. ¶ 55.  As a consequence of Defendant's rejection of Plaintiff's relocation proposal, Plaintiff simply must remain at 4100 Stevens Creek and pay rent, as required by the 2006 Dealer Lease.  Compl. ¶¶ 54–55.  Plaintiff has not established coercion within the meaning of the ADDCA.  *Wallace*, 780 F.2d at 1056; *see also Fray Chevrolet Sales v. Gen. Motors Corp.*, 536 F.2d 683, 685–86 (6th Cir. 1976) (rejecting a bad faith claim because "there was no 'either-or' attempt at coercion or intimidation").

Indeed, courts have rejected ADDCA claims based on nearly identical factual allegations as those alleged here.  In *General Motors Corp. v. Dealmaker, LLC*, a dealer alleged that a manufacturer, GM, had "'coerced' [the dealer] by rejecting [the dealer's] relocation request, and

10

that GM's denial of its relocation request will serve to terminate, either directly, indirectly or constructively, [the dealer's] franchise." 2007 WL 2454208, at *5 (N.D.N.Y. Aug. 23, 2007). The dealer further alleged that "GM ha[d] coerced and damaged [the dealer] by refusing, without sufficient reason, to permit [the dealer's] relocation." *Id.* The district court in *Dealmaker* dismissed the dealer's ADDCA claim under Rule 12(b)(6), stating that the dealer's complaint evinced no "demand, let alone a wrongful demand, by GM." *Id.* Indeed, the district court noted that "[e]ven assuming GM wanted to terminate [the dealership], there is no allegation supporting a plausible claim of coercion or intimidation" regarding GM's rejection of the dealer's relocation request, as required by the ADDCA. *Id.*; *see also Kaiser v. Gen. Motors Corp.*, 396 F. Supp. 33, 42 (E.D. Pa. 1975), *aff'd* 530 F.2d 964 (3d Cir. 1976) (finding that a defendant's repeated refusal of a dealer's requests to relocate did not constitute a violation of the ADDCA because the facts "failed to allege that defendant's conduct even begins to approximate coercion or intimidation").

In sum, Plaintiff has no right "to the location of its own choosing," *Golden Gate*, 597 F.2d at 681, and Defendant's "denial of [Plaintiff's] relocation request" does not amount to coercion or intimidation within the meaning of the ADDCA. *Dealmaker*, 2007 WL 2454208, at *5. Accordingly, because Plaintiff has failed to allege that Defendant acted in bad faith within the meaning of the ADDCA, Count One fails to state a claim for relief under the statute. *Id.*; *see Autohaus*, 567 F.2d at 911 ("[U]nless the transactions between the parties involves coercion or intimidation, or threats of coercion or intimidation," the manufacturer has not violated the ADDCA); *Wallace*, 780 F.2d at 1056 ("To show that [the manufacturer] failed to act in 'good faith' [the dealer] had to prove that [the manufacturer's] conduct amounted to coercion and that as the result of intimidation or threats, [the dealer] was forced to act or refrain from acting and that it suffered damage.").

The Court accordingly holds that Plaintiff has failed to adequately allege a claim under the

11

United States District Court
Northern District of California

ADDCA.  However, because it is not evident that amendment is futile, the Court will grant leave to amend for Plaintiff to address the above deficiencies.  *See Lopez*, 203 F.3d at 1130 ("A district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").  Accordingly, the Court GRANTS with leave to amend Defendant's motion to dismiss Count One.

### B.  Failure to State a Claim Under Michigan Law for Breach of the Implied Covenant of Good Faith and Fair Dealing

Count Two of Plaintiff's complaint alleges that Defendant violated the implied covenant of good faith and fair dealing in refusing to approve Plaintiff's relocation proposal.  Compl. ¶¶ 57–64.  The Sales Agreements between Plaintiff and Defendant provide that its terms "shall be construed in accordance with the laws of the State of Michigan," and accordingly this claim is governed by Michigan contract law.  *Id.* ¶ 58.  For the reasons discussed below, the Court agrees with Defendant that Count Two fails to state a claim under Michigan law for breach of the implied covenant of good faith and fair dealing.

In general, "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."  *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003); *see also Mathew Enter., Inc. v. Chrysler Grp., LLC*, 2014 WL 3418545, at *10 (N.D. Cal. July 11, 2014) (stating, in a separate dispute between Plaintiff and Chrysler Group, that "Michigan law does not recognize a general implied duty of good faith and fair dealing").  However, Michigan courts have recognized such a duty when "a party to a contract makes the manner of its performance a matter of its own discretion."  *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W. 2d 678, 680 (Mich. Ct. App. 1975)); *see also Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) ("An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion.").

12

Case No. 16-CV-03551-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

"Discretion arises," and thus the implied covenant of good faith and fair dealing is recognized, "when the parties have agreed to defer decision on a particular term of the contract" or "from a lack of clarity or from an omission in the express contract." *Stephenson*, 328 F.3d at 826 (internal quotation marks omitted).   By contrast, "Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights." *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989) (internal quotation marks omitted) (applying Michigan law); *see Lancia Jeep Hellas S.A. v. Chrysler Grp. Int'l LLC*, 2016 WL 1178303, at *9–10 (Mich. Ct. App. Mar. 24, 2016) (quoting *Hubbard* and *Stephenson* approvingly for this proposition).   More specifically, under Michigan law, where the "plain language" of an agreement gives a decision "*exclusively* to [one party to the Agreement], the contract presume[s] no discretion and, thereby, remove[s] any basis upon which to imply a covenant of good faith and fair dealing." *Stephenson*, 328 F.3d at 827.

In its motion to dismiss, Defendant relies on the Fifth Circuit's decision in *Hubbard Chevrolet Company v. General Motors Corporation*, 873 F.2d at 877, to argue that the parties' Sales Agreement here does not imply a covenant of good faith and fair dealing under Michigan law.  Def. Mot. at 9.  In *Hubbard*, the Fifth Circuit applied Michigan contract law to an agreement between a franchisor and franchisee, and held that the plain language of the parties' agreement precluded the court from implying a covenant of good faith and fair dealing.  *Id.*  The contract between the parties in *Hubbard* stated that "Dealer will conduct the Dealership Operations only from the location . . . approved for that purpose by General Motors." *Id.* at 877.  Further, the contract provided that "a dealer who wants to relocate 'agrees to give General Motors prior written notice'" and that "'[n]o change in Dealership Location . . . will be made without the written approval of General Motors.'" *Id.*

Analyzing this contractual language under Michigan law, the Fifth Circuit in *Hubbard* held

13

United States District Court
Northern District of California

that this language "le[ft] no room for a court or jury to supply limits" because "[t]he contract d[id]

not limit the reasons upon which GM c[ould] base its relocation decisions." *Id.*  Thus, the parties

in *Hubbard* had "deferred no decisions regarding relocation or the relevant factors." *Id.* at 878.

Rather, the contract "gave GM the authority to approve or disapprove relocation for its own

reasons, and thus set out the limits of what the contract requires of these parties." *Id.*  The Fifth

Circuit thus held that the implied covenant of good faith and fair dealing did not apply under

Michigan law. *Id.* ("[T]he covenant has no role to play in the relocation dispute between GM and

Hubbard."); *see also Stephenson*, 328 F.3d at 827 (relying on *Hubbard* to conclude that the

covenant of good faith and fair dealing could not be applied to a contract that gave one company

the "exclusive judgment to approve or disapprove" a transfer of interest).

   The contract language at issue here is substantially identical to the contract language at

issue in *Hubbard*.  Section 11(d)(ii) of the Sales Agreement states that:

> DEALER shall not make any change in the location of Dealership Operations or
> make any change in the area and use of Dealership Facilities without the prior
> written approval of [Defendant].  Any written approval of a change in the location
> or in the area or use of Dealership Facilities shall be valid only if in the form of a
> new Dealership Facilities and Location Addendum or a separate written agreement
> signed by DEALER and one of the authorized representatives of [Defendant].

ECF No. 19-1, at 51.  This language, like the language at issue in *Hubbard*, "g[ives] [Defendant]

the authority to approve or disapprove relocation for its own reasons, and thus set[s] out the limits

of what the contract requires of these parties." *Hubbard*, 873 F.2d at 878.  Under the plain

language of § 11(d)(ii), "any decision concerning" relocation of Plaintiff's facility "rested

*exclusively* with [Defendant]." *See Stephenson*, 328 F.3d at 827.  Accordingly, under the

reasoning of *Hubbard* and similar cases applying Michigan law, § 11(d)(ii) of the Sales

Agreement "presume[s] no discretion and, thereby, remove[s] any basis upon which to imply a

covenant of good faith and fair dealing." *Id*; *see Parlovecchio Bldg., Inc. v. Charter Cnty. of*

Case No. 16-CV-03551-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

*Wayne Bldg. Auth.*, 2014 WL 631264, at *3–4 (Mich. Ct. App. Feb. 13, 2014) (applying *Hubbard* and holding that the covenant of good faith and fair dealing did not apply because the parties' contract gave the defendant "the right to unilaterally decide to bring the contract to an end, based on its own interest").

In sum, because the language of the parties' agreement in § 11(d)(ii) "vests in Defendant the express authority to determine whether to" grant Plaintiff's relocation request, "Plaintiff's implied covenant claims are barred by law." *Mathew Enter., Inc.*, 2014 WL 3418545, at *10; *see also Stephenson*, 328 F.3d at 827. Accordingly, the Court GRANTS Defendant's motion to dismiss Count Two. Further, because Plaintiff's claims are barred as a matter of Michigan law, *Mathew Enter., Inc.*, 2014 WL 3418545, at *10, the Court dismisses this claim with prejudice. *Leadsinger*, 512 F.3d at 532.

**C. Failure to State a Claim Under California Vehicle Code § 3060**

Lastly, Count Three of Plaintiffs complaint alleges that Defendant violated California Vehicle Code § 3060 by "constructive[ly] terminat[ing]" Plaintiff's franchise without providing "written notice" and without a finding by the California New Motor Vehicle Board ("CNMVB") of "good cause for termination," as required by § 3060. Compl. ¶¶ 65–71. For the reasons discussed below, the Court agrees with Defendant that Plaintiff has failed to state a claim under Count Three.

The CNMVB "was created by the [California] Legislature in 1973 in part to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor and to insure that dealers fulfill their obligations under their franchises." *Yamaha Motor Corp. v. Superior Court*, 185 Cal. App. 3d 1232, 1237 (Cal Ct. App. 1986) (internal quotation marks omitted). The CNMVB is given authority by statute to "'[h]ear and consider . . . a protest presented by a franchisee pursuant to'" specified sections of the California Vehicle Code,

15

United States District Court
Northern District of California

including § 3060. *Id.* (quoting Cal Veh. Code § 3050).

Section 3060 of the California Vehicle Code provides that "no franchisor shall terminate or refuse to continue any existing franchise unless . . .": (1) the franchisee and CNMV "have received written notice from the franchisor" sixty days prior to termination "setting forth the specific grounds for termination," and (2) the CNMVB finds, if the franchisee "file[s] a protest with the board within 30 days after receiving the 60-day notice," that there is "good cause for termination." *Id.* § 3060(a).

Defendant asserts that Plaintiff has failed to state a claim for violation of California Vehicle Code § 3060 because a violation of § 3060 "falls within the jurisdiction of the [CNMVB]," and Plaintiff has failed to exhaust its administrative remedies. Def. Mot. at 18. As discussed below, the Court agrees with Defendant.

Protests filed "pursuant to Section 3060" of the California Vehicle Code fall within the CNMVB's jurisdiction. *Yamaha Motor Corp.*, 185 Cal. App. 3d at 1241 ("[T]he [CNMVB] is specifically empowered to 'Hear and consider . . . a protest by a franchisee pursuant to Section 3060."). California courts have explained that "[i]t is settled that 'where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.'" *Mathew Zaheri Corp. v. Mitsubishi Motor Sales of Am., Inc.*, 17 Cal. App. 4th 288, 293 (Cal. Ct. App. 1993) (quoting *Abelleira v. District Court of Appeal, Third Dist.*, 17 Cal. 2d 280, 292 (Cal. 1941)). Accordingly, California courts have held that "[t]he [CNMVB] is the administrative forum authorized to make [good-cause] determinations [under § 3060] and provide administrative remedies," and a party that "fail[s] to exhaust its administrative remedies" with the CNMVB is "precluded from seeking judicial relief." *Yamaha Motor Corp*, 185 Cal. App. 3d at 1241.

Plaintiff's complaint contains no allegations that it exhausted its administrative remedies

16

with the CNMB prior to seeking relief in this Court. Rather, Plaintiff asserts in its opposition to Defendant's motion to dismiss that, because Count Three is based on allegations that Defendant is *constructively* terminating Plaintiff's franchise, Plaintiff's termination "will not be preceded by a notice of termination under section 3060, and, therefore, [Plaintiff] will have no ability to invoke the board's jurisdiction by filing a protest of the termination." Pl. Opp. at 11. Accordingly, Plaintiff contends that it did not need to exhaust its administrative remedies. *Id.*

Contrary to Plaintiff's argument, California courts have held that "[l]ack of notice does not prevent the [CNMVB] from exercising its powers to resolve disputes between franchisors and franchisees." *Yamaha Motor Corp.*, 185 Cal. App. 3d at 1239–40. Rather, "[t]he administrative remedy of a [CNMVB] protest remains available to [a franchisee], despite the lack of formal notice, and that remedy must be exhausted before [a franchisee] can resort to judicial action." *Id.* at 1240. Accordingly, because claims pursuant to § 3060 of the California Vehicle Code fall within the CNMVB's jurisdiction, and because Plaintiff has not alleged that it has exhausted its administrative remedies prior to filing suit, Plaintiff has failed to state a claim in Count Three. *See Mathew Zaheri Corp.*, 17 Cal. App. at 293.

The Court thus GRANTS Defendant's motion to dismiss Count Three. However, leave to amend is granted so that Plaintiff can allege facts that demonstrate that Plaintiff appropriately exhausted its administrative remedies. *Lopez*, 203 F.3d at 1127 (holding that leave to amend is granted unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts").[3]

---

[3] Defendant also argues that Plaintiff failed to state a claim in Count Three because Plaintiff failed to allege sufficient facts in its complaint to demonstrate entitlement to injunctive relief. Def. Mot. at 11–12. However, because the Court dismisses Count Three on the basis of Plaintiff's failure to exhaust, the Court need not reach Defendant's preliminary injunction argument. Nonetheless, Plaintiff is on notice of Defendant's argument and must cure any identified deficiencies or face dismissal with prejudice in a second round motion to dismiss, if any.

Case No. 16-CV-03551-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss as follows: (1) Counts One and Three are dismissed with leave to amend; (2) Count Two is dismissed with prejudice. Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within (30) days of this Order.  Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies in this Order will result in dismissal with prejudice of Plaintiff's dismissed claims.  Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated:  November 16, 2016

_____
LUCY H. KOH
United States District Judge

Case No. 16-CV-03551-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS